**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Michael Engel,<br><br>       on behalf of himself and all others similarly situated,<br><br>       Plaintiff,<br><br>v.<br><br>VGW Holdings Pty Ltd.; VGW Holdings U.S., Inc.; VGW US, Inc.; VGW Malta Ltd.; VGW Games Ltd.; VGW Holdings, Ltd.; VGW Luckyland Inc.; VGW Canada; and National Sweepstakes Company LLC<br><br>       Defendants. | Case No. -cv- (/)<br><br><br>**CLASS ACTION COMPLAINT**<br>**JURY TRIAL DEMANDED** |

**INTRODUCTION**

1.     Defendants VGW Holdings Pty Ltd.; VGW Holdings U.S., Inc.; VGW US, Inc.; VGW Malta Ltd.; VGW Games Ltd.; VGW Holdings, Ltd.; VGW Luckyland Inc.; VGW Canada; (collectively, "VGW") own and operate illegal online gambling websites in Minnesota, including ChumbaCasino.com ("Chumba"), LuckyLandCasino.com ("LuckyLand Casino"), LuckyLandSlots.com ("LuckyLand Slots"), and GlobalPoker.com ("Global Poker") (collectively, the "Gambling Websites"). Users of the Gambling Websites buy digital tokens, bet them on games of chance including, for example, virtual slot machines and simulated table games, and can redeem any token winnings for U.S. dollars ("USD").

2.     Defendant National Sweepstakes Company LLC ("National Sweepstakes") (collectively with VGW, "Defendants") is promotional and marketing company that specializes in administrating sweepstakes, contests, and games. It provides back-end services for companies such as advice on legal compliance, game administration, entry collection, prize fulfillment and management, and game hosting. On information and belief, National Sweepstakes is retained by

VGW to manage and deliver certain winnings and prizes to users of the Gambling Websites.

3. Lawful gambling in Minnesota is limited to "charitable gaming." Charitable gaming is limited to bingo, raffles, paddlewheels, tipboards, and pull-tabs conducted by a licensed non-profit, in a licensed physical place, supervised by a licensed gambling manager, and subject to hundreds of other regulations.[1] Minnesota law requires gambling profits to be spent on charitable purposes.

4. The Gambling Websites operate in Minnesota and are available and advertised to Minnesota residents.

5. Defendants' gambling operation in Minnesota is an egregious violation of Minnesota law. Defendants must be enjoined from running the Gambling Websites and gambling services within Minnesota, and must disgorge every cent they have earned from Minnesotans' gambling wagers.

**PARTIES**

6. Plaintiff Michael Engel is a natural person and citizen of the State of Minnesota.

7. Defendant VGW Holdings Pty Ltd. is a for-profit Australian limited Company that specializes in the development and publication of online casino-themed gambling websites. VGW Holdings Pty Ltd. is headquartered at Level 8 & 10, Australia Place, 15-17 William Street, Perth, WA 6000, Australia. On information and belief, VGW Holdings Pty Ltd. is the parent company of Defendants VGW Holdings U.S., Inc.; VGW US, Inc.; VGW Malta Ltd.; and VGW Games Ltd.

8. VGW Holdings U.S., Inc. is a Delaware corporation with its principal place of

---

[1] Minnesota permits gambling in certain limited and express circumstances: the Minnesota State Lottery; parimutuel horse racing; or gambling conducted under the jurisdiction of the federal Indian Gaming Regulatory Act. VGW and the Gambling Websites do not fit any of these categories.

business at 1881 9th Street, Suite 2002, Boulder, Colorado 80302.

9. Defendant VGW US, Inc. is a Delaware corporation with its principal place of business at 1881 9th Street, Suite 2002, Boulder, Colorado 80302.

10. Defendant VGW Malta Ltd. is a Maltese corporation with its principal place of business at Trident Park, Notabile Gardens No. 6, Level 3 Central Business District Mdina Road, Zone 2 Birkirkara, CBD 2010, Malta.

11. VGW Games Ltd. is a Maltese corporation with its principal place of business at Trident Park, Notabile Gardens No. 6, Level 3 Central Business District Mdina Road, Zone 2 Birkirkara, CBD 2010, Malta.

12. VGW Holdings, Ltd. is a Maltese corporation with its principal place of business at Trident Park, Notabile Gardens No. 6, Level 3 Central Business District Mdina Road, Zone 2 Birkirkara, CBD 2010, Malta.

13. VGW Luckyland Inc. is a Delaware corporation with its principal place of business at 1881 9th Street, Suite 202, Canyon Center, Boulder, CO 80302.

14. VGW Canada is a Canadian company incorporated in Canada with its principal place of business at 66 Wellington Street West, 5300, Toronto, Ontario, M5K 1E6, Canada.

15. National Sweepstakes Company LLC is a New York limited liability company headquartered at 1143 East Union Street, Newark, New York 14513. On information and belief, none of National Sweepstakes Company LLC's members are domiciled in Minnesota.

16. Defendants' relationships with each other, other entities, and their respective areas of ownership and control are opaque. Plaintiff alleges that these combined Defendants acted and continue to act in concert and defines such concerted acts as being done by Defendants.

**JURISDICTION AND VENUE**

17.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and at least one member of the Class is a citizen of a different State than Defendants.

18.    This Court has personal jurisdiction over Defendants because they conduct substantial, continuing, and systematic business in Minnesota by advertising and offering their Gambling Websites and services to Minnesota citizens and subsequently establishing ongoing economic relationships with them. Furthermore, Defendants know that Minnesota residents use the Gambling Websites because Minnesota is not included in the Gambling Websites' own list of States in which they may not be accessed, and Defendants have directly targeted Minnesota Players with advertisements pertaining to Minnesota legislation.

19.    Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred in this District and Defendants are subject to personal jurisdiction in this District. Venue is also proper in this District under 28 U.S.C. § 1391(c)(3) because Defendants are foreign business entities.

## FACTUAL BACKGROUND

**A. Minnesota's public policy and statutory scheme limit gambling to "charitable gaming," expressly excluding VGW's Gambling Websites.**

20.    Unless it is "lawful gambling," anyone who operates a "gambling place" or "gambling device" is guilty of a gross misdemeanor. Minn. Stat. § 609.76, subd. 1(1), (4). The same is true for anyone who "[r]eceives, records, or forwards bets or offers to bet." *Id.* at subd. 1(7).

21.    "Lawful gambling" is "the operation, conduct or sale of bingo, raffles, paddlewheels, tipboards, and pull-tabs" conducted in conformity with Chapter 349 of the Minnesota Code and the Minnesota Gambling Control Board's ("MNGCB") regulations. Minn.

4

Stat. § 349.12, subd. 24.

22. A license granted by the MNGCB is required to conduct lawful gambling. Minn. Stat. § 349.16, subd. 1.

23. Only an "organization" is eligible to obtain such a license. *Id.* An "organization" is "any fraternal, religious, veterans, or other nonprofit organization." Minn. Stat. § 349.12, subd. 28. An organization cannot obtain a license unless "it has established a permanent location in Minnesota where the gambling records required by this chapter will be kept and has . . . established a gambling bank account in Minnesota." Minn. R. 7861.0220, sub. 2(B).

24. A licensed organization "may conduct lawful gambling only on premises it owns or leases" in Minnesota, under the supervision of an on-site gambling manager.[2] Minn. Stat. § 349.18. Leases must be approved by the MNGCB. § 349.18. Licensed organizations must apply for a "premises permit" before conducting legal gambling. The application requires disclosure of, among other details, the bank account number for the account where gross gambling profits will be deposited. Minn. R. 7861.0240, sub. 2(F).

25. Gross profits from lawful gambling may only be spent on "lawful purposes or allowable expenses." Minn. Stat. § 349.15, subd. 1. There are a limited number of "lawful purposes." Minn. Stat. § 349.12, subd. 25(a). Such purposes include charitable donations, such as to "an individual or family suffering from poverty, homelessness, or disability" (subd. 25(a)(2)); to state wildlife management projects such as trail maintenance (subd. 25(a)(13)); to fund

---

[2] All lawful gambling must occur under the supervision of a licensed "gambling manager." Minn. Stat. § 349.167. The MNGCB may not issue a gambling manager license to anyone who "has engaged in conduct the [MNGCB] determines is contrary to the public health, welfare, or safety or the integrity of lawful gambling." Minn. Stat. § 349.167, subd. 2(a)(4). If an organization's gambling manager dies, the organization must contact the MNGCB within one business day to establish a plan to replace the gambling manager. Minn. Stat. § 349.167, subd. 2(d)(1).

celebrations held in honor of an individual's military service, not to exceed $5000 annually (subd. 25(a)(17)); or to pay for repairs to a licensed gambling premises, in an amount not to exceed 5% of gross gambling profits per fiscal year (subd. 25(a)(22)). An organization that spends less than 30% of gross gambling profits on lawful purposes is "automatically placed on probation" and subject to sanctions unless it reaches 30% within one year. Minn. Stat. § 349.15, subd. 1(c).

26.    Hundreds of rules promulgated by the MNGCB regulate every detail of the operation of lawful gambling. For instance, all lawful gambling must be conducted on a cash-only basis and exclusively while the licensed gambling premises are open for regular business (Minn. R. 7861.0260, sub. (1)(B), (H)); paddlewheels must spin at least 4 times before stopping (Minn. R. 7861.0300, sub. (1)(E)); used raffle tickets must be kept on site for 3.5 years after an organization reports them on its tax returns (Minn. R. 7861.0310, sub. 11); and organizations must collect a "winner verification form" from anyone who wins more than $600 on an electronic pull-tab, which includes a signed affirmation from the winner that they are at least 18 years old and will report their winnings to the IRS (Minn. R. 7861.0285, sub. 3(E)(1)).

**B. VGW's Gambling Websites are illegal casinos under Minnesota law.**

27.    The Malta Gaming Authority regulates and licenses gambling operations within Malta by type of gaming service, and by "verticals" within each type.

28.    Under Malta's Gaming Authorisations Regulations, Type 1 gaming services are "games of chance played against the house, the outcome of which is determined by a random generator, and shall include casino type games, including roulette, blackjack, baccarat, poker played against the house, lotteries, secondary lotteries, and virtual sports games . . . ." Type 3 gaming services are "games of chance not played against the house and wherein the operator is not exposed to gaming risk, but generates revenue by taking a commission or other charge based

on the stakes or the prize, and shall include player versus player games such as poker, bingo, betting exchange, and other commission based games . . . ."[3]

29.     According to Malta Gaming Authority Direct 3 of 2018, a "'gaming vertical' means a category of products that requires specific safeguards in order to ensure it is offered in a manner which adheres to law and to the regulatory objectives, owing to its characteristics and the distinction between it and other categories of products."[4]

30.     The different verticals include:

(a) Casino, including live casino; (b) Lotteries; (c) Secondary lotteries; (d) Fixed odds betting, including live betting; (e) Pool betting, including betting exchange; (f) Peer-to-peer poker; (g) Peer-to-peer bingo and other peer-to-peer games, but excluding pool betting, betting exchange, and poker; (h) Lottery messenger services; (i) Controlled skill games; and (j) Any other gaming vertical which is not comprised within the above.

31.     VGW Games Limited is licensed by the Malta Gaming Authority to provide "Type 1 Gaming Services," specifically in the "Casino" vertical, and "Type 3 Gaming Services," specifically in the "Peer-to-Peer Bingo or Games" vertical. VGW Games Limited's license record lists four website URLs for its services: https://luckylandcasino.com; https://unitedslots.com; http://globalpoker.com; and http://www.chumbacasino.com.[5]

32.     Chumba (chumbacasino.com), LuckyLand Casino (luckylandcasino.com), LuckyLand Slots (luckylandslots.com), and Global Poker (globalpoker.com), are websites that

---

[3] Subsidiary Legislation 583.05(32)(i), (iii), available at https://legislation.mt/eli/sl/583.5/eng/pdf.

[4] Directive 3 of 2018, Gaming Authorisations and Compliance Directive, Malta Gaming Authority, available at https://www.mga.org.mt/app/uploads/Directive-3-of-2018-Gaming-Authorisations-and-Compliance-Directive.pdf.

[5]     Dynamic     Seal     Of     Authorisation,     Malta     Gaming     Authority, authorisation.mga.org.mt/verification.aspx?lang=EN&company=4debab56-21d5-49fd-96c5-1c2b5500dbb4&details=1 (last visited June 8, 2026).

host internet games that simulate traditional casino and other games of chance, ranging from virtual

scratch-off tickets and live blackjack to virtual slots and dozens of other games (Figures 1–4).



(Figure 1: Chumba Home Page)



(Figure 2: LuckyLand Casino home page)



(Figure 3: LuckyLand Slots games page)



(Figure 4: Global Poker Casino menu)

33.    These games work consistently across the Gambling Websites. Individuals who play these games ("Players") wager VGW's proprietary digital tokens—Gold Coins and Sweeps Coins—on the outcomes of these various games. Players cannot play the Gambling Websites' games without wagering either Sweeps Coins or Gold Coins.

34.    Sweeps Coins are redeemable for gift cards or cash at a ratio of 1-to-1 with the USD. Per the Gambling Websites' Terms and Conditions, Sweeps Coins are redeemable for cash or gift cards.[6] LuckyLand Slots's website further provides that "1.00 Sweeps Coins winnings can be redeemed for $1.00 USD of cash prizes, so go for the HUGE Wins!" (Figure 5).

---

[6] The current versions of the Terms and Conditions for all four Gambling Websites are identical in most material respects. *Compare* Chumba Casino Terms and Conditions, Version 23.3 (last updated April 7, 2026), https://media.www.chumbacasino.com/vgwholdings89e8-vgw-prod-817c/media/260407_POL_CHU_TCs_23-3.pdf; *with* LuckyLand Casino Terms and Conditions, Version 5.1 (last updated Apr. 24, 2026), https://media.luckylandcasino.com/vgwholdings89e8-vgw-prod-817c/media/260424_POL_LLC_TCs_5-1.pdf; *and* LuckyLand Slots Terms of Service, Version 27.0 (last updated February 2, 2026), https://www.luckylandslots.com/terms; *and* Global Poker Terms and Conditions, Version 25.2 (last update April 27, 2026), https://media.globalpoker.com/vgwholdings89e8-vgw-prod-817c/media/260407_POL_POK_TCs_25-2.pdf. For convenience, where the Terms and Conditions are identical or not materially different, this Complaint will cite only to the Chumba Casino Terms and Conditions.



**Cash Prizes**
Through our patented Sweepstakes technology, players can legally redeem their winnings online. Cash prize redemptions are sent via secure Electronic Funds Transfer (EFT) directly to your bank! SC 1.00 Sweeps Coins winnings can be redeemed for $1.00 USD of cash prizes, so go for the HUGE wins! You can also just play for fun by using Gold Coins. Gold Coins won have no prize value but it's a great way to relax and unwind. Play for fun or play for the thrill of cash prizes, the choice is yours! That's the LuckyLand Slots difference.

**Legal in USA**
Our patented Sweepstakes technology has been legally reviewed and adheres to all existing Sweepstakes laws in the USA. We've done the hard work so you can enjoy our fun, online, slot machines and the thrill of cash prizes in the comfort of your own home anywhere in the USA (exceptConnecticut, Delaware, Michigan, Montana, Nevada and Washington). At LuckyLand Slots, the fun never stops!

**Fast, Secure Prize Redemptions**
Win big and want to redeem for cash prizes fast? No problem. Cash prize redemptions are sent via secure Electronic Funds Transfer (EFT) directly to your bank or Skrill Wallet! You can also choose redeem gift cards from popular stores across the US! So spin, win, and have a great time! AtLuckyLand Slots, taking home your winnings has never been easier.

**24/7 Customer Support**
Rest easy knowing that we are here to serve you. Our team of customer service reps are standing by anytime you need assistance. Got a question? Run into an issue? Our expert team is just a click away. Also don't forget to head over to our Support section to read articles about our game and get fast, responsive assistance!

As you can see, the LuckyLand Slots difference really sets us apart from the competition. Everyone loves to play fun, beautiful looking slot machines, especially in the convenience of our homes, when we have some time to pass. But most slot games are just for fun, with no possibility of winning anything of value in return. At LuckyLand Slots, we believe that you can have your cake and eat it too. That's why we've created some of the best looking, fun slot machines and added the thrill of cash prizes on top! Also, we know that peace of mind is a must for fun. A common concern players have when playing slots online is safety. Is this legal? Is my information safe? Is my money safe? At LuckyLand Slots, you won't have to worry about these. Prize redemptions are sent via secure Electronic Funds Transfer (EFT) directly to your bank! In most cases, players will get their prizes within 3-7 business days. Lastly, we know that you are here because you enjoy playing slot machines. That is why LuckyLand Slots is committed to creating and rolling out new slot machines on a regular basis. Check out our portfolio of slot games on the Games page. As new machines are added, we will update them here. We also know that players have different slot machine preferences. We will make sure we create a variety of themes, bonus features, and styles in our games.

(Figure 5: luckylandslots.com/cash-prizes)

35. Gold Coins are not redeemable and only have value on the Gambling Websites.

36. Players can purchase Sweeps Coins and Gold Coins on the Gambling websites. Through different bundles, Players receive practically 1 Sweeps Coins and an escalating number of Gold Coins for every $1 USD they spend. For example, Players can spend $20 USD to obtain 20.01 Sweeps Coins and 5,000,000 Gold Coins. Alternatively, Players can spend $100 USD and obtain 101.5 Sweeps Coins and 35,000,000 Gold Coins.

37. The vast majority of Players purchase and wager Sweeps Coins to gamble with as if it were real currency, because it effectively is, as confirmed by Defendants' license by the Malta Gaming Authority to operate casinos on many of these websites.

**a. VGW receives and records bets in violation of Minnesota criminal law.**

38. Receiving and recording bets is a gross misdemeanor under Minn. Stat. § 609.76, subd. 1(7).

11

39.     A "bet" is a "bargain whereby the parties mutually agree to a gain or loss by one to the other of specified money, property, or benefit dependent upon chance." Minn. Stat. § 609.75, subd. 2.

40.     Each time a Player wagers Sweeps Coins, they and VGW mutually agree to a gain or loss by one to the other in the amount of the value of the wager.

41.     Sweeps Coins constitutes "money," "property," and a "benefit" because they can be redeemed for USD (or gift cards in an equal amount of USD), and because it is a credit that extends a Player's privilege to play the Gambling Websites' games.

42.     The outcome of the Gambling Websites' games are dependent upon chance because they are controlled by an algorithm that simulates randomness. This is further confirmed by Defendants' license to offer casino games of chance in Malta.

43.     Accordingly, each instance of a Player wagering Sweeps Coins on the outcome of a Gambling Website game is a "bet" because it is a "bargain whereby" the Player and VGW "mutually agree to a gain or loss" in the amount of the value of the wagered Sweeps Coins, which is "dependent upon chance."

44.     VGW receives and records these bets in the natural course of its operation, thus violating Minn. Stat. § 609.76, subd. 1(7).

**b. The Gambling Websites and each of their games is a "gambling device" operated in violation of Minnesota criminal law.**

45.     A "gambling device" is "a contrivance the purpose of which is that for a consideration a player is afforded an opportunity to obtain something of value, other than free plays . . . the award of which is determined principally by chance." Minn. Stat. § 609.75, subd. 4.

46.     The statutory definition of "gambling device" explicitly incorporates a "video game of chance," which is "a game or device that simulates one or more games commonly referred to as

12

poker, blackjack, craps, hi-lo, roulette, or other common gambling forms, though not offering pecuniary award or gain to its players." Minn. Stat. § 607.75, subd. 8. "[A]ny video game" that is "primarily a game of chance, and has no substantial element of skill involved" or "[a]wards game credits or replays and contains a meter or device that records unplayed credits or replays" is also a "video game of chance." *Id.*

47.     Wagering and purchasing Sweeps Coins and Gold Coins constitutes consideration conferred by Players upon VGW.

48.     By wagering and purchasing Sweeps Coins and Gold Coins, Players are afforded the opportunity to obtain more Sweeps Coins or Gold Coins.

49.     Sweeps Coins are "something of value, other than free plays" because they can be redeemed for USD.

50.     The outcomes of each of the Gambling Websites' games are determined by chance because they are controlled by an algorithm that simulates randomness.

51.     Accordingly, the Gambling Websites and each of their games is a gambling device because their purpose is for Players to wager Sweeps Coins and Gold Coins for the opportunity to obtain more Sweeps Coins or Gold Coins, the outcome of which is determined by chance.

52.     The Gambling Websites' games also constitute "video games of chance" because they simulate poker, blackjack, craps, hi-lo, roulette, and other gambling forms, the outcomes of which are determined by chance without any substantial element of skill involved.

53.     Accordingly, the Gambling Websites and each of their games are gambling devices that were "set[] up for the purpose of gambling" in violation of Minn. Stat. § 609.76, subd. 1(4).

   c.  **VGW is not compliant with either Chapter 349 of the Minnesota Code or the MNGCB's regulations.**

54.     VGW's Gambling Websites offer gambling games other than bingo, raffles,

13

paddlewheels, tipboards, and pull-tabs, which are the only forms of "lawful gambling" allowed in Minnesota. Minn Stat. § 349.12, Subd. 24.

55.     VGW does not have a license to conduct lawful gambling in Minnesota, as required by § 349.16, Subd. 1.

56.     VGW cannot obtain the required license because it is not a non-profit organization. § 349.12, Subd. 28.

57.     VGW does not conduct its gambling business in Minnesota on physical premises that it owns or leases, as required by Minn. R. 7861.0220, sub. 2(B).

58.     VGW does not employ a licensed gambling manager approved by the MNGCB, as required by Minn. Stat. § 349.167.

59.     VGW does not spend any of its gross profits from gambling on the "lawful purposes" contemplated by Minn. Stat. § 349.12, subd. 25(a).

60.     VGW does not conduct its gambling business on a cash-only basis, as required by Minn. R. 7861.0260, sub. 1(B).

61.     VGW is non-compliant with hundreds of additional statutes and regulations that govern the conduct of gambling businesses in Minnesota.

62.     No provision of Minnesota law allows VGW's license with the Malta Gaming Authority to substitute for licensure with the State of Minnesota.

> **d.  National Sweepstakes aids, abets, and participates in VGW's illegal gambling operations.**

63.     It is a gross misdemeanor in Minnesota to "intentionally participate[] in the income of a gambling place or bucket shop." Minn. Stat § 609.755, subd. 1(2).

64.     Also under Minnesota law, "[a] person is criminally liable for a crime committed by another if the person intentionally aids, advises, hires, counsels, or conspires with or otherwise

procures the other to commit the crime." Minn. Stat. § 609.045, subd. 1.

65.    On information and belief, VGW retains National Sweepstakes to advise on and assist with the administration, management, and promotion of its Gambling Websites.

66.    At the very least, VGW appoints National Sweepstakes as its "Payment Administration Agent,"[7] whereby National Sweepstakes administers and delivers certain winnings and payments to Players, including Players in Minnesota.

67.    VGW's Payment Administration Agents "accept or make payments (including merchant facilities) from or to Players on [VGW's] behalf" and have "the same rights, powers and privileges" that VGW has under the Gambling Websites' Terms and Conditions.[8]

68.    National Sweepstakes knowingly aids, abets, and participates in VGW's illegal gambling operation.

69.    National Sweepstakes, as VGW's agent for gambling-related services, knowingly shares in and benefits from the money VGW receives from its illegal gambling operation.

C.    **VGW's Gambling Websites deceptively markets themselves to Minnesota consumers as legal "Social Casinos."**

70.    VGW deceptively brands the Gambling Websites' games as "Social Plus online games," meaning that "[a]ll of [VGW's] games are free to play, while offering the 'Plus' of sweepstakes promotions and industry-leading consumer protections."[9]

71.    VGW's Gambling Websites deceptively represent that "THE GAMES AND PLATFORM DO NOT OFFER REAL MONEY GAMBLING, AND NO ACTUAL MONEY IS

---

[7] Chumba Casino Terms and Conditions, Version 23.3, at p. 2 (last updated April 7, 2026), https://media.www.chumbacasino.com/vgwholdings89e8-vgw-prod-817c/media/260407_POL_CHU_TCs_23-3.pdf;

[8] *Id.* at §§ 8.20–.21.

[9] https://www.vgw.co/

15

REQUIRED TO PLAY."[10]

72.    Although Players can occasionally obtain an insignificant amount of Sweeps Coins and Gold Coins without purchase (such as when they first sign up or as a small percentage of future purchases), the only way Players can continue to play once they run out is by paying VGW for more Sweeps Coins and Gold Coins.

73.    VGW deceptively represents that Players "CANNOT PURCHASE SWEEPS COINS," claiming, "We may give you Sweeps Coins free of charge when you sign up to a Platform, as a bonus when you purchase Gold Coins or via each of our free alternative methods of entry as set out in the Sweeps Rules."[11]

74.    VGW deceptively markets Sweeps Coins, which are redeemable at a 1-to-1 ratio for USD, as a "free bonus" that comes with the purchase of Gold Coins, which are not redeemable.

75.    The amount of "bonus" Sweeps Coins that comes with the purchase of valueless Gold Coins is practically equal to the amount of USD spent ostensibly to obtain Gold Coins.

76.    VGW's characterization of the transaction as a Player's USD for Gold Coins, with which VGW includes a USD-equivalent of Sweeps Coins as a "bonus," is a thin pretext for real-money gambling that deceives no one, least of all VGW's Players.

77.    However, Players *are* deceived by VGW's implicit and explicit false representations that this pretext is a loophole that renders the Gambling Websites legal in Minnesota.

78.    For example, on at least one of the Gambling Websites, VGW assures Players that,

---

[10] Chumba Casino Terms and Conditions, Version 23.3, at p. 1 (last updated April 7, 2026), https://media.www.chumbacasino.com/vgwholdings89e8-vgw-prod-817c/media/260407_POL_CHU_TCs_23-3.pdf

[11] *Id.* at 1.

"Through our patented Sweepstakes technology, players can legally redeem their winnings online, Cash prize redemptions are sent via secure Electronic Funds Transfer (EFT) directly to your bank! SC 1.00 Sweeps Coins winnings can be redeemed for $1.00 USD of cash prizes, so go for the HUGE wins!," and that VGW's "patented sweepstakes technology has been legally reviewed and adheres to all existing Sweepstakes law in the USA."[12]

79.     Regardless of how VGW characterizes these transactions, Players can and do purchase Sweeps Coins at a 1-to-1 ratio with USD, gamble with the Sweeps Coins on the Gambling Websites, and redeem Sweeps Coins at a 1-to-1 ratio for USD.

80.     By deceptively representing the transaction for Sweeps Coins and, thereby, the nature of its business, VGW also misrepresents the legality of its business.

81.     VGW further deceptively represents the legality of its business in Minnesota via the list of "Excluded Territories" in its Terms and Conditions. All of the Gambling Websites' Terms and Conditions urge that:

> WHEN PARTICIPATING IN: (i) STANDARD PLAY, YOU DO NOT RESIDE IN OR ACCESS THE PLATFORM FROM THE EXCLUDED TERRITORIES; AND (ii) PROMOTIONAL PLAY, YOU DO NOT RESIDE IN OR ACCESS THE PLATFORM FROM THE EXCLUDED TERRITORIES OR THE STATE OF CALIFORNIA, OR THE STATE OF IDAHO, OR THE STATE OF LOUISIANA, OR THE STATE OF MISSISSIPPI, OR THE STATE OF NEW JERSEY, OR THE STATE OF NEW YORK, OR THE STATE OF TENNESSEE, OR THE STATE OF WEST VIRGINIA.

The Terms and Conditions' list of excluded territories includes Washington, Michigan, Montana, Connecticut, Nevada, and Delaware.

82.     Minnesota is not included in the list of excluded territories or the list of additional states excluded from "promotional play," even though internet casinos are illegal in Minnesota. By

---

[12] LuckyLand Slots, *The LuckyLand Slots Difference*, https://luckylandslots.com/cash-prizes (last accessed May 18, 2026)

excluding Minnesota from these lists, VGW represents to Players that its gambling platform is legal in Minnesota.

83.   Indeed, VGW recently started targeting Minnesota Players *directly* with deceptive representations that its Gambling Websites are legal. On at least one of its Gambling Websites, VGW presented Minnesota Players with a pop-up urging them "send a message to your local representative" by visiting a webpage hosted by VGW's "industry association that champions free-to-play Social Plus games like ours." (Figure 6).



(Figure 6: Chumba home page pop-up)

84.   On November 5, 2025, Minnesota Attorney General Keith Ellison announced he had "sent letters to 14 operators of illegal gambling websites, directing them to stop offering online

gambling in Minnesota . . . ."[13] The announcement noted that "[t]hese websites include social sweepstakes casinos that use virtual coins to play casino games for cash and prizes" and further stated that the Minnesota Department of Public Safety's Alcohol and Gambling Enforcement division had sent letters to the same 14 sites in June of 2025 asking them to stop their operations or comply with Minnesota's laws, but the sites had not done so. The announcement did not include the actual letters sent, but listed "VG LuckyLand" as one of the recipients.

85.   Similarly, on February 4, 2026, the Illinois Gaming Board sent a letter to Chumba asserting that "Chumba Casino's activity constitutes illegal gambling in violation of Illinois law" and demanding that Chumba "block Illinois residents from accessing your services or discontinue offering cash, gift cards, and other prizes through your service."[14]

**D.  No enforceable agreement exists between Players in Minnesota and VGW.**

86.   "The general rule" in Minnesota "is that a contract entered into in violation of a statute, such as the pursuit of a business, profession, or occupation without procuring a license or permit required by law for the protection of the public, is void." *Lew Bonn Co. v. Herman*, 135 N.W.2d 222, 225 (Minn. 1965); *accord Handy v. St. Paul Globe Pub. Co.*, 42 N.W. 872, 873 (Minn. 1889) ("A contract which requires or contemplates the doing of an act prohibited by law is absolutely void.").

87.   A "void contract" is "[a] contract that is of no legal effect, so that there is really no

---

[13] Attorney General Ellison directs Illegal Gambling Websites to Stop Offering Services in Minnesota, The Minnesota Attorney General's Office (Nov. 5, 2025), https://www.ag.state.mn.us/Office/Communications/2025/11/05_IllegalGamblingWebsites.asp (last accessed June 8, 2026).

[14] Letter from Marcus D. Fruchter, Administrator, Illinois Gaming Board Legal Division, to Chumba Casino (Apr. 4, 2026), available at https://igb.illinois.gov/content/dam/soi/en/web/igb/documents/casino/cease-and-desist-letters/20260204-cease-and-desist-chumba-casino.pdf.

contract in existence at all." Black's Law Dictionary (12th ed. 2024).

88.     The Gambling Websites' Terms and Conditions grant a license to Players to participate in their respective websites, which host gambling activity in a manner plainly prohibited by Minnesota statutes and policy intended to protect the public.

89.     Accordingly, any purported agreement between Players in Minnesota and VGW and/or the Gambling Websites is void under Minnesota law and, thus, it is as if the sham agreement never existed.

90.     Furthermore, insofar as the purported agreement to arbitrate disputes within the Gambling Websites' Terms and Conditions are severable from the rest of the Terms and Conditions, such agreements have also never been formed, do not exist, and are unenforceable.

## FACTS SPECIFIC TO PLAINTIFF MICHAEL ENGEL

91.     Plaintiff Michael Engel began gambling on Chumba in or around January 2024.

92.     Since then, Plaintiff Engel has purchased Sweeps Coins thousands of times for the purpose of wagering them on Chumba's games.

93.     Plaintiff Engel primarily played Chumba's slot machines.

94.     Plaintiff Engel gambled on Chumba on his phone almost constantly. He would use Chumba's "Auto Spin" feature, which allowed him to pre-set 100 spins of a given slot machine game. He would use this feature so he could gamble throughout every day, including while he worked and even while driving.

95.     Plaintiff Engel lost approximately $75,000 gambling on Chumba.

96.     During the same period he lost money gambling on Chumba, Plaintiff Engel also lost money gambling by gambling on LuckyLand Slots and Global Poker, though he used those VGW websites less than Chumba.

97.     Plaintiff Engel never realized any gain from gambling on VGW's websites.

98.     Due to Plaintiff Engel's excessive use of Chumba, Chumba assigned him an "Account Executive," who acted as his dedicated customer service representative.

99.     Plaintiff Engel's Account Executive regularly encouraged and enabled Plaintiff Engel to gamble on Chumba by contacting him frequently and sending him free Sweeps Coins.

100.    Furthermore, Plaintiff Engel's Account Executive sent him gift cards worth up to $100 for brands including Sephora, Best Buy, and DoorDash.

101.    Once, Plaintiff Engel's Account Executive contacted him to inquire why he had not used Chumba for 3 consecutive days. Plaintiff Engel did not gamble for those 3 days because he was in the hospital.

102.    While Plaintiff Engel gambled before using Chumba, Minnesota's gambling regulations restrained his habit from getting out of control. For instance, when Plaintiff Engel had purchased pull-tabs at a licensed gambling establishment, he could only purchase them in-person with cash and had to leave whenever the business that sold them closed.

103.    Conversely, Plaintiff Engel could engage in 24 hour gambling binges on Chumba by using any available source of money or credit. At his peak usage, Plaintiff Engel would gamble on Chumba practically non-stop from the moment he awoke until he fell asleep.

104.    Plaintiff Engel has been treated for and continues to struggle with gambling addiction.

105.    Plaintiff Engel lives in financial precarity due to the cost of his addictive use of VGW's illegal internet casinos. He is underemployed as a gig worker, has substantial debts, and has a very poor credit profile.

106.    Plaintiff Engel's story is exactly what Minnesota's public policy of strictly limiting

gambling is intended to prevent.

## CLASS ALLEGATIONS

107.    Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), on behalf of the following Class:

> All Minnesota residents who have paid and wagered money, cryptocurrency, or other things of value to the Gambling Websites within the relevant statute of limitations.

> Specifically excluded from the Class are:

>> a.    Defendants' employees, officers, directors, or heirs; and

>> b.    This Court, this Court's direct family members, and this Court's personnel.

108.    This class action satisfies all requirements of Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), including, but not limited to, numerosity, commonality, typicality, adequacy, and predominance.

109.    **Numerosity:** Consistent with Fed. R. Civ. P. 23(a)(1), the proposed Class is "so numerous that joinder of all members is impracticable."

110.    According to Semrush estimates, in March 2026, Chumba attracted over 27 million monthly visits, LuckyLand Slots attracted over 5 million monthly visits, and Global Poker attracted over 4 million monthly visits, all from the United States.[15]

111.    At least thousands, if not tens or hundreds of thousands, of those visitors were likely Minnesota residents.

112.    The numerosity requirement of Rule 23 is met.

113.    **Commonality and Predominance:** Common questions of law and fact exist as to

---

[15] Semrush, *Most Visited Gambling Websites in the United States, Updated March 2026*, https://www.semrush.com/trending-websites/us/gambling?utm_source.com (last accessed May 15, 2026). No reliable site-traffic data appears to exist for LuckyLand Casino.

all members of the Class and predominate over any questions affecting solely individual Class members.

114.    Common questions of law or fact that will be dispositive of the claims of the Class include, but are not limited to:

a.    Whether VGW's Gambling Websites are real-money gambling internet casinos;

b.    Whether real-money gambling internet casinos are legal in Minnesota;

c.    Whether Defendants' operations violate Minnesota public policy;

d.    Whether Plaintiff and the Class wagered money or other things of value on the Gambling Websites;

e.    Whether Plaintiff and the Class are entitled to recover their gambling wagers from Defendants;

f.    Whether VGW deceived Plaintiff and the Class in a manner violative of Minnesota's consumer protection statutes; and

g.    Whether Defendants were unjustly enriched in the amount of Plaintiff and the Class's gambling wagers.

115.    **Typicality:** Plaintiff's claims are typical of the Class's claims in that (a) Plaintiff paid money or other things of value to gamble on the Gambling Websites, (b) Plaintiff lost money or other things of value by gambling on the Gambling Websites, (c) Plaintiff was deceived by VGW's misrepresentations about the legality of its business, and (d) Plaintiff is entitled to recover his gambling wagers from Defendants.

116.    **Adequacy:** Consistent with Fed. R. Civ. P. 23(a)(4), Plaintiff "will fairly and adequately protect the interests of the class." Plaintiff has no adverse or conflicting interests to the

proposed Class members. He has retained counsel competent and experienced in complex class action litigation who possess the necessary financial resources to adequately and vigorously litigate this class action.

117.    **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impractical. Prosecution of separate actions by individual Class members would create an inherent risk of inconsistent and varying adjudications, with the concomitant risk of the establishment of incompatible and conflicting standards of conduct for Defendants. Furthermore, VGW misrepresents the nature and legality of its business, so many Class members do not know to consult an attorney. Finally, due to the vastly unequal market power between Class members and Defendants, a class action may be the only way to ensure all Class members' claims are adjudicated. Plaintiff knows of no difficulty that would make a class action in this case unmanageable.

## CLAIMS FOR RELIEF

### COUNT I
### Recovery of Money Lost Pursuant to Minn. Stat. § 541.20

118.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

119.    Under Minn. Stat. § 541.20, "Every person who, by playing at cards, dice, or other game . . . shall lose to any person so playing or betting any sum of money or any goods . . . may sue for and recover such money by a civil action, before any court of competent jurisdiction."

120.    Plaintiff, Class members, and VGW are all "person[s]." Plaintiff and Class members played "cards, dice," and "other game[s]" on the Gambling Websites. VGW's Gambling Websites have games that simulate card games like poker and blackjack, dice games like craps,

and other games ranging from slot machines to arcade-style games.

121.    Plaintiff and the Class lost "money or any goods" by gambling on VGW's Gambling Websites because they wagered Sweeps Coins, which they purchased with money or other things of value and could redeem for cash.

122.    VGW is a "person so playing" cards, dice, or other games against Plaintiff and the Class because it owns, operates, and directly profits from Plaintiff and the Class's gambling wagers. Every time Plaintiff or the Class plays a game using Sweeps Coins on the Gambling Websites, they play against VGW. When Plaintiff and the Class lose, VGW wins.

123.    National Sweepstakes is also a "person so playing" cards, dice, or other games against Plaintiff and the Class because it assists with the administration and management of VGW's gambling operation and thereby directly profits from the same.

124.    Accordingly, Plaintiff and the Class "may sue for and recover" their gambling wagers from Defendants.

## COUNT II
### Violation of Minnesota's Prevention of Consumer Fraud Act
### Minn. Stat. § 325F.69

125.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

126.    "The act, use, or employment by any person of any fraud, unfair or unconscionable practice, false pretense, false promise, misrepresentation, misleading statement, or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise . . . is enjoinable." Minn. Stat. § 325F.69, subd. 1.

127.    "For purposes of [§ 325F.69] . . . an unfair or unconscionable act or practice is any . . . act, or practice that: (1) offends public policy as established by the statutes, rules, or common

25

law of Minnesota; (2) is unethical, oppressive, or unscrupulous; or (3) is substantially injurious to consumers." Minn. Stat. § 325F.69, subd. 8.

128.   VGW is a "person" because it is a "business entity." Minn. Stat. § 325F.68, subd. 3.

129.   VGW's business practices are unfair and unconscionable because (1) operating unlicensed internet casinos violates Minnesota's public policy as established by its statutes, rules and common law limiting "lawful gambling" to charitable gaming; (2) deceptively operating an illegal casino is unethical, oppressive, and unscrupulous; and (3) VGW's operations in Minnesota have substantially injured Plaintiff and the Class.

130.   By misrepresenting its illegal gambling business as a legal "social plus casino," VGW also engages in the act, use, and employment of fraud, false pretense, false promise, misrepresentation, misleading statement, and deceptive practices.

131.   VGW engages in these unlawful acts "with the intent that others rely thereon in connection with the sale of merchandise." The statutory definition of "merchandise" includes "goods, commodities, intangibles . . . or services." Minn. Stat. § 325F.68, subd. 2. VGW sells Sweeps Coins—which is a good, a commodity, and an intangible—to Players so that they can access VGW's gambling services. VGW deceptively misrepresents the nature and legality of its business with the intent that consumers rely thereon in connection with the sale of Sweeps Coins and VGW's gambling services.

132.   "[A]ny person injured by a violation of [Minn. Stat. § 325F.69] may bring a civil action and recover damages, along with costs and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the court." Minn. Stat. § 8.31, subd. 3a.

133.   Accordingly, as a result of VGW's violations of Minn. Stat. § 325F.69, Plaintiff and

26

the Class are entitled to recover their gambling wagers from VGW, as well as costs and attorneys' fees.

## COUNT III
### Violation of Minnesota's Deceptive Trade Practices Act
### Minn. Stat. § 325D.44

134. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

135. VGW's conduct violates Minn. Stat. § 325D.44, subd 1:

A person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person: . . .
(2) causes likelihood of confusion or misunderstanding as to the . . . approval or certification . . . of goods or services;
(3) causes likelihood of confusion or misunderstanding as to . . . certification by another; . . .
(5) represents that goods or services have sponsorship [and] approval . . . that they do not have . . .
(9) advertises goods or services with intent not to sell them as advertised; . . .
(11) makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions; . . .
(13) engages in . . . unfair or unconscionable acts or practices; or
(14) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

136. By misrepresenting the legality of its gambling business in Minnesota, VGW violated Minn. Stat. § 325D.44, subd. 1(2), (3), and (5) because it caused confusion and misunderstanding regarding the approval and certification of VGW by the Minnesota legislature and the Minnesota Gambling Control Board.

137. For example, LuckyLand Slots advises its Players that they "can legally redeem their winnings online," and that VGW's "patented Sweepstakes technology has been legally reviewed and adheres to all existing Sweepstakes laws in the USA."[16]

---

[16] LuckyLand Slots, *The LuckyLand Slots Difference*, https://luckylandslots.com/cash-prizes (last accessed May 18, 2026)

138.   By misrepresenting the nature of the transaction for Sweeps Coins as a "free bonus," VGW violated Minn. Stat. § 325D.44, subd. 1(9) and (11) because it advertised Sweeps Coins as free, while actually intending to sell and in fact selling them at a 1-to-1 ratio with and as a proxy for USD.

139.   VGW's conduct violates Minn. Stat. § 325D.44, subd. 1(13) because it is both unfair and unconscionable. Per Minn. Stat. § 325D.44, subd. 2, the standard of proof for a violation of § 325D.44, subd. 1(13) is the one articulated in Minn. Stat. § 325F.69, subd. 8: "an unfair or unconscionable act or practice is any . . . act, or practice that: (1) offends public policy as established by the statutes, rules, or common law of Minnesota; (2) is unethical, oppressive, or unscrupulous; or (3) is substantially injurious to consumers." VGW's conduct satisfies each element.

140.   VGW's conduct violates Minn. Stat. § 325D.44, subd. 1(14) because it created confusion and misunderstanding in manners similar to those contemplated by the other subsections.

141.   For these violations, Plaintiff and the Class are entitled to recover damages, costs, and attorneys' fees under Minn. Stat. § 8.31, subd. 3a, and to obtain injunctive relief, costs, and attorneys' fees under Minn. Stat. § 325D.45.

## COUNT IV
### Violation of Minnesota's False Statement in Advertising Law
### Minn. Stat. § 325F.67

142.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

143.   "Any person, firm, corporation, or association who, with intent to sell . . . merchandise . . . publishes, disseminates, circulates, or places before the public… an advertisement

28

of any sort . . . [that] contains any material assertion, representation, or statement of fact which is untrue, deceptive, or misleading, shall . . . be guilty of a misdemeanor, and any such act is declared to be a public nuisance and enjoined as such." Minn. Stat. § 325F.67.

144. By deceptively misrepresenting its business as a Minnesota-legal, free "social plus casino" while intending to sell and selling Sweeps Coins (a proxy for USD) and its illegal gambling services, VGW violated Minn. Stat. § 325F.67.

145. For these violations, Plaintiff and the Class are entitled to recover damages, costs, and attorneys' fees under Minn. Stat. § 8.31, subd. 3a.

**COUNT V**
**Unjust Enrichment**

146. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

147. In Minnesota, unjust enrichment is available as a remedy when no valid contract governs the dispute. *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012).

148. No valid contract governs this dispute because "illegality has so tainted" the relationship between Plaintiff and the Class and Defendants that enforcing any purported contract between them "would be contrary to public policy." *Isle Wellness, Inc. v. Progressive N. Ins. Co.*, 725 N.W.2d 90, 93 (Minn. 2006).

149. Additionally, no valid contract governs the dispute between Plaintiff and the Class and National Sweepstakes because National Sweepstakes is not a signatory to any agreement, purported or otherwise, with Plaintiff or members of the Class.

150. A party is "unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully." *First Nat'l Bank of St. Paul v. Ramier*, 311 N.W.2d 502, 504 (Minn. 1981).

151. "The elements of an unjust enrichment claim are: (1) a benefit conferred; (2) the defendant's appreciation and knowing acceptance of the benefit; and (3) the defendant's acceptance and retention of the benefit under such circumstances that it would be inequitable for him to retain it without paying for it." *Dahl v. R.J. Reynolds Tobacco Co.*, 742 N.W.2d 186, 196 (Minn. Ct. App. 2007) (citing *Acton Const. Co. v. State*, 383 N.W.2d 416, 417 (Minn. Ct. App. 1986)).

152. Defendants were unjustly enriched in the amount of Plaintiff and the Class's gambling wagers because (1) Plaintiff and the Class conferred a benefit upon Defendants by purchasing and wagering Sweeps Coins; (2) VGW appreciates, knowingly accepts, and profits from this benefit; (3) National Sweepstakes appreciates, knowingly accepts, and profits from this benefit via VGW; and (4) it would be inequitable for Defendants to retain this benefit because it was enriched through its illegal operation of an internet casino in Minnesota.

153. As a result of Defendants' unjust enrichment, Plaintiff and the Class are entitled to recovery of their gambling wagers.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, on behalf of himself and all others similarly situated, respectfully requests the following relief from this Court:

1. Certify this case as a class action on behalf of the proposed Class defined herein;

2. Appoint Michael Engel as Class representatives;

3. Appoint the undersigned counsel as counsel for the Class;

4. Grant judgment in favor of Plaintiff and the Class for violations of Minnesota's laws and public policy limiting lawful gambling to charitable gaming, for an award of all gambling wagers made by Plaintiff and the Class pursuant to Minn. Stat. § 541.20;

30

5.     Grant judgment in favor of Plaintiff and the Class for violations of Minnesota's consumer protection statutes, for an award of actual damages, costs of litigation, and attorneys' fees pursuant to Minn. Stat. § 8.31, subd. 3a;

6.     Declare Defendants' operation of real-money internet casinos in Minnesota to be illegal and enter an injunction requiring Defendants to cease operating in Minnesota;

7.     Award the Class prejudgment interest at the applicable rate;

8.     Award the Class all direct and consequential damages allowed by law;

9.     Award the Class all appropriate equitable and injunctive relief;

10.    Award the Class its reasonable costs and attorney fees; and

11.    Grant any further relief that the Court deems appropriate.

## TRIAL BY JURY

Plaintiff is entitled to and hereby respectfully demands a trial by jury.

Respectfully submitted,

Date: June 18, 2026

By: */s/ Daniel C. Hedlund*
Daniel C. Hedlund (#258337)
Daniel J. Nordin (#392393)
Joe E. Nelson (#402378)
**GUSTAFSON GLUEK PLLC**
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
(612) 333-8844
dhedlund@gustafsongluek.com
dnordin@gustafsongluek.com
jnelson@gustafsongluek.com

Vildan A. Teske (#241404)
Lee T. Owen (#505523)
**TESKE LAW PLLC**
80 South Eighth Street, Suite 900
Minneapolis, MN 55402
(612) 767-0521

31

teske@teskelaw.com
owen@teskelaw.com

Garrett D. Blanchfield (#2098550)
Brant D. Penney (#316878)
Roberta A. Yard (#322295)
**REINHARDT WENDORF &
BLANCHFIELD**
80 South Eighth Street, Suite 900
Minneapolis, MN  55402
(651) 287-2100
g.blanchfield@rwblawfirm.com
b.penney@rwblawfirm.com
r.yard@rwblawfirm.com